## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KALILAH BRANTLEY** | : **CIVIL ACTION** |
| | : |
| | : |
| | : |
| v. | : |
| | : **NO. 14-4185** |
| **KEYE WYSOCKI, et al.** | : |
| | : |
| | : |

### MEMORANDUM

**KEARNEY, J.**                                                                                    **June 15, 2015**

As alleged, to retaliate and punish a subordinate union member for publicly challenging her union activities, one union member supervisor solicited the aid of her close friend, a state police officer, to engineer a criminal complaint for secretly taping an earlier union meeting, visit the union member at work, seize and listen to her cell phone without a warrant under threat of arrest and then, after finding nothing substantive on the tape, prompt the Commonwealth to prosecute the complaining union member for illegally taping protests at a union meeting which occurred almost six months earlier.   The trial court suppressed the cell phone recording as illegally obtained and the Pennsylvania Superior Court affirmed. Thereafter, the trial court granted the Commonwealth's *nolle prosequi* motion.    The subordinate union member now sues the state police officer and the union supervisor as allegedly working in concert as well as the union members' employer.    In the accompanying Order, we grant the employer's motion to dismiss the supervisory liability claim and grant the individual defendants' motions to dismiss a Section 1983 claim for malicious prosecution and selective enforcement and vindictive prosecution.   At this preliminary stage, we do not dismiss claims against the alleged friendly

individual defendant state police officer and union supervisor for the state law claim of malicious prosecution and First Amendment retaliation.

## I.  FACTS PLEAD IN SECOND AMENDED COMPLAINT

Plaintiff union member Kalilah Brantley ("Brantley") repeatedly confronted her supervisor Renee Burrows ("Burrows") while they worked at US Airways Group, Inc. ("USAir") regarding union policy. (Second Am. Compl. ¶ 10)  At another supervisor's direction, Brantley left work early on December 28, 2010.[1] (*Id.* ¶ 11)  The following day, Burrows called Brantley to her office with four (4) co-workers and asked her to sign a "coaching review," representing she left early the previous day. (*Id.* ¶ 12)  Brantley refused to sign. (*Id.*)  On December 30, 2010, Burrows and other USAir employees including Brantley attended a union meeting at which the parties discussed Burrows' accusations of job abandonment and violation of union contract terms. (*Id.* ¶ 13)  Brantley alleges she verbally opposed Burrows' actions which, she claims, violated union policy. (Id)  Brantley admits using her cell phone to secretly record, or attempt to record, two minutes of the forty-five (45) minute meeting. (*Id.* ¶¶ 14-15)  When asked, she confessed taping the meeting but claims Burrows did not ask her to stop or delete the recording. (*Id.*)

Over the next two weeks in January 2011, Brantley continued to verbally oppose Burrows' continued violations of union policy. (*Id.* ¶ 16)  During this time, Burrows went to Keye Wysocki, a close friend serving as a Pennsylvania State Police Officer ("Officer Wysocki"). (*Id.* ¶ 17)   On January 18, 2011, Officer Wysocki personally took Burrows to file a criminal complaint with the Philadelphia police department alleging Brantley recorded the December 30, 2010 union meeting without her consent. (*Id.* ¶ 18) On February 8, 2011, Officer

---

[1] In December 2010, USAir employed Brantley as a customer service agent and Burrows as her shift manager. (*Id.*¶¶ 9-10)

2

Wysocki, another John Doe officer and fellow Officer Keith Hagan[2], wearing plain clothes, approached Brantley at her USAir workplace demanding she turn over the cell phone allegedly used to record Burrows six weeks earlier. (*Id.* ¶ 19) Brantley refused and asked the police officers if they had a search warrant. (*Id.* ¶ 20) They did not. (*Id.*) Wysocki said he did not need a warrant vaguely explaining a friend asked him to look into something. Wysocki threatened to arrest Brantley if she resisted his efforts to take her phone. (*Id.*) Brantley called her mother and Wysocki threatened her mother if Brantley did not turn over the phone, "she's gonna get her ass kicked." (*Id.* ¶ 21)

Brantley then adjourned to another room at USAir and turned over her cell phone. (*Id.* ¶¶ 22-23) Officer Wysocki listened to the recording on Brantley's phone and left. (*Id.* ¶ 23) Almost four months later, the Commonwealth issued a police summons charging Brantley with "Intercept Communication." (*Id.* ¶ 24) After a hearing at which Wysocki allegedly admitted conducting the investigation on Burrows' behalf, the trial court suppressed the tape recorded evidence. (*Id.* ¶ 26) The Pennsylvania Superior Court affirmed. (*Id.* ¶ 31) The Commonwealth moved for *nolle prosequi* and the trial court dismissed the case in January 2013. Brantley does not plead the reason for the *nolle prosequi*.

## II. ANALYSIS

Brantley sued her employer USAir, her supervisor Burrows and Pennsylvania State Police Officer Wysocki along with John Doe officers claiming malicious prosecution under state law and 42 U.S.C. §1983 (Count I), Selective Enforcement/Prosecution and Vindictive Prosecution (Count II), and First Amendment Retaliation under Section 1983 (Count III). Each Defendant moves to dismiss. The facts alleged in the Second Amended Complaint barely meet

---

[2] Brantley's most recent Second Amended Complaint withdrew claims against Officer Hagan, and at oral argument, Brantley withdrew claims against all John Doe officers.

the plausibility standard allowing us to draw a reasonable inference Defendants Burrows and Wysocki, acting in concert, may be liable for malicious prosecution under state law and First Amendment retaliation under Section 1983. [3]

## A. Burrows and Wysocki may be liable for acting in concert, but not USAir.

Section 1983 does not create substantive rights, but provides "a remedy for the deprivations of rights established elsewhere in the Constitution or federal laws." *Green v. Chester Upland Sch. Dist.*, No. 14-3685, 2015 WL 409569, at *2 (E.D. Pa. 2015) (citing *Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004)). To defeat a motion to dismiss a § 1983 claim, Brantley must allege facts sufficient to show (1) a person acting under color of state law deprived her of (2) a right secured by the Constitution or laws of the United States. *Id.* at *2.

*Burrows' and Wysocki's §1983 liability*

Burrows is not a state actor. A private actor and a public actor working in concert may form a civil conspiracy to violate an individual's civil rights under § 1983.[4] *Adickes v. Kress & Co,* 398 U.S. 144, 150-52 (1970)(finding state action where private party and state official conspired to violate plaintiff's equal protection rights); *Schmitt v. Farruggio*, No. 13-2007, 2014 WL 4055835, at *4 (E.D. Pa. 2014)(allegations suggesting "willful action in concert" sufficient to avoid dismissal of private actor). To state such a claim, Brantley must plead the

---

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

[4] Brantley's counsel withdrew all §1983 claims against USAir at oral argument.

circumstances of alleged wrongdoing with particularity to place Defendants on notice of the precise misconduct with which they are charged. Particular allegations of conspiracy, such as those addressing the period of time, the object and actions taken in furtherance of the conspiracy, are sufficient to avoid dismissal. *Labalokie v. Capital Area Intermediate Unit*, 926 F. Supp. 503, 508-09 (M.D. Pa. 1996).

Burrows claims she cannot be considered a state actor unless Brantley sufficiently alleged a conspiracy or "pre-arranged plan" between her and the police. After dismissing the Amended Complaint for failing to sufficiently allege a conspiracy (ECF Doc. No. 35), we find the Second Amended Complaint sufficiently alleges concerted action by Burrows and Officer Wysocki to meet the requirement of state action under section 1983.[5] "[T]he Court must look beyond the bare allegations of the Complaint and consider whether the conduct reasonably could have occurred." *Labalokie*, 926 F. Supp. at 508-09.

Subject to developing facts in discovery, Brantley's claims of First Amendment retaliation and malicious prosecution under state law will not be dismissed outright against Defendant Burrows or Officer Wysocki.[6]

---

[5] Brantley claims Burrows induced the police to come to her workplace, interrogate her, and follow up with a citation. Brantley avers sufficient concerted action to hold a private party liable as a "state actor" under §1983.

[6] We will closely examine qualified immunity once a record is developed. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We are aware of the "importance of resolving questions of immunity at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). At present, there is an insufficient factual record to determine whether immunity is appropriate. *Johnson v. City of Philadelphia*, No. 13-002963, 2013 WL 4014565, *5 (E.D. Pa. 2013).

Brantley concedes she has no basis for §1983 liability against USAir under a *Monell* theory.[7] Brantley does not allege affirmative conduct by USAir to avoid dismissal on the state claims, and purportedly seeks to invoke liability solely based on the principle of *respondeat superior*. (ECF Doc. No. 36 at ¶ 6).

To state a *respondeat superior* claim against USAir under Pennsylvania law, Brantley must allege facts showing Burrows' conduct "is of a kind and nature that the employee is employed to perform; ... occurs substantially within the authorized time and space limits; ... is actuated, at least in part, by a purpose to serve the employer; and ... if force is intentionally used by the employee against another, the use of force is not unexpected by the employer." *McClain v. Citizen's Bank, N.A.*, 57 F. Supp. 3d 438, 441-42 (E.D. Pa. 2014) (citing *Costa v. Roxborough Memorial Hosp.*, 708 A.2d 490, 493 (Pa.Super. 1998). After three attempts, Brantley does not sufficiently allege *respondeat superior* liability as to any element. There is no pleading which could lead this Court to plausibly find Burrows engaged in her conduct for USAir. To the contrary, Brantley's themes and facts all point to Burrows being motivated to retaliate against Brantley for challenging union policies, not for USAir's benefit.

### B. Brantley states a claim for state law malicious prosecution but not under § 1983.

Under Pennsylvania law, Burrows and Wysocki may be liable for common law malicious prosecution if (1) they initiated or procured initiation of criminal proceedings; (2) the proceedings ended in Brantley's favor; (3) the proceeding was initiated without probable cause; and (4) they acted with malice or for a purpose other than bring Brantley to justice. *Donahue v.*

---

[7]The Court:...I see not a single allegation that would get *Monell* liability for 1983 against US Air.
Mr. Weisberg: I agree, your Honor.
(ECF Doc. No. 53 at p. 5: 10-13)

*Gavin*, 280 F.3d 371 (3d Cir. 2002); *Miller v. Pennsylvania R.R. Co.*, 89 A.2d 809, 811 (Pa. 1952).

Brantley adequately pleads a plausible state law malicious prosecution claim. Brantley alleges Burrows and Officer Wysocki procured initiation of a criminal proceeding for a purpose other than to bring her to justice. She pleads Burrows and Wysocki conspired to retaliate against her with the absence of probable cause.[8] Defendants do not dispute the Commonwealth applied for judgment *nolle prosequi* dismissing the underlying criminal action against Brantley.[9] *DiFronzo v. Chiovero*, 406 Fed.Appx. 605, 609 (3d Cir. 2011).

A claim for malicious prosecution under §1983 requires these same elements plus "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Id.* at 608; *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). Brantley does not plead deprivation of liberty consistent with the requirements of a § 1983 pleading. The police did not detain or arrest her. Her §1983 malicious prosecution claim is dismissed.

## C. Brantley does not state a claim for selective enforcement/prosecution and vindictive prosecution.

Brantley attempts to state a claim for selective prosecution or, in the alternative, vindictive prosecution, although she offers scant legal argument of viability under Pennsylvania

---

[8] Curiously, Brantley avers she taped the union meeting at least initially without Burrows' consent, which at least suggests possible probable cause to issue a criminal citation. (Second Am. Compl. ¶14). Her argument is based on Burrows' ratification or later consent to the taping, although there is no averment as to consent from other persons in the meeting.

[9] Ordinarily this disposition is not sufficient grounds for pursuing a malicious prosecution claim. "[N]ot all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 579–580 (3d Cir. 1996)). "A §1983 malicious prosecution plaintiff must be innocent of the crime charged in the underlying prosecution." *Id.*, (citing *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir.2000)). A disposition of *nolle pros* signifies termination of charges in favor of the accused "only when their final disposition is such as to indicate the innocence of the accused" *Id.*, (citing Restatement (Second) of Torts (1976) § 660, *cmt. a*).

law. "Selective enforcement" or "selective prosecution" describes a plaintiff's equal protection claim requiring (1) persons similarly situated have not been prosecuted, and (2) decisions were made on the basis of a suspect classification such as race, religion, or to prevent defendant's exercise of a fundamental right. *Gov't of Virgin Islands v. Harrigan*, 791 F.2d 34, 35 (3d Cir. 1986).[10] Selective application of a criminal statute and the "consequent discretion vested in the prosecutor to decide who will receive an enhanced sentence does not, alone, establish a violation of equal protection of the law." *Id.* Although captioned as such, Brantley does not plead a claim for selective enforcement or equal protection insofar as she has not plead the existence of any similarly situated individuals treated differently by defendants, and absence of any rational basis for differential treatment.[11]

During oral argument, the Court granted Brantley permission to submit a supplemental brief demonstrating vindictive prosecution is a viable claim and properly pled. Brantley's supplemental brief contains only a passing citation to *Collins v. Borough of Trainor*, No. 13-7613, 2014 WL 2978312 (E.D. Pa. 2014), already cited in her initial brief, and does not offer any reasoned support regarding viability of this cause of action. We are unconvinced that Pennsylvania recognizes this cause of action, and note the prosecutor's broad discretion in deciding whom to prosecute:

> In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the

---

[10] "[T]he government has broad discretion in deciding whom to prosecute." *Harrigan*, 791 F.2d at 35; *see Wayte v. United States*, 470 U.S. 598 (1985). We are mindful of the United States Supreme Court's observation that "some selectivity in enforcement is not in itself a Federal Constitutional violation." *Id.*, (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

[11] Alternatively the term "selective prosecution" can be a defense in criminal matters. To plead selective prosecution, a party must show (1) persons similarly situated were not prosecuted, and (2) decisions were motivated by some discriminatory purpose. *Harrigan*, 791 F.2d at 36; *Wayte*, 470 U.S. at 608. Again, Brantley does not plead existence of any similarly situated individuals.

> decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.' *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

*United States v. Armstrong,* 517 U.S. 456, 463-64 (1996). Despite three (3) opportunities, Brantley fails to plead the elements of this cause of action. [12]

### D. Brantley states a claim for First Amendment retaliation.

To state a claim for First Amendment retaliation, Brantley must plead: (1) she engaged in protected speech or activity afforded protection under the First Amendment; (2) she suffered adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the protected conduct and the adverse action. *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006).

Brantley alleges she attended a union meeting protesting Burrows' violation of union contract terms and thereafter continued opposing Burrows' violations of union policy. (Second Am. Compl. ¶13). Given the wide deference at this pleading stage, Brantley's alleged protests may be activities protected by the First Amendment. *Justice v. Danberg,* 571 F. Supp. 2d 602, 611 (D. Del. 2008). *See Thomas v. Collins,* 323 U.S. 516, 532 (1945) ("Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society."); *United Fed'n of Postal Clerks v. Blount,* 325 F.Supp. 879, 883 (D.D.C.1971) (per curiam), *aff'd,* 404 U.S. 802 (1971) ("The right [of public employees] to organize collectively and to select representatives for the purposes of engaging in collective bargaining is ... a fundamental right."); *Labov v. Lalley,* 809 F.2d 220, 222–23 (3d Cir.1987)

---

[12] Brantley also does not allege any causal connection between the prosecution in the underlying case and her pending claim making a claim of vindictive prosecution plausible.

("Plainly efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action.").

Defendants dispute Brantley's so-called protest of union activities led to her prosecution for intercepting communications. She could have been prosecuted for this non-consensual taping offense regardless of Burrows' retaliatory intent and Wysocki's alleged aid. Brantley presently alleges adverse action and a causal link between her protected activities and the adverse action. We do not know at this stage. This dispute is a factual matter for discovery.