IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KALILAH BRANTLEY | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 14-4185 |
| KEYE WYSOCKI, et al. | : |

# MEMORANDUM

**KEARNEY, J.**  October 30, 2015

Employment supervisors cannot enlist police officers to arrest workplace adversaries in retaliation for challenging the supervisor's alleged violation of union members' rights to overtime and other contract benefits. Questions of fact require the jury to determine whether an employment supervisor has improperly retaliated against an employee's exercise of First Amendment rights to protected speech when the supervisor, for an unknown reason, convinces a Pennsylvania state police corporal to charge her employee with audiotaping a grievance meeting without authorization weeks earlier, but shortly after the employee continued to post letters challenging the supervisor's alleged violations of union policies. But the police officer is entitled to qualified immunity for interrogating, investigating and arresting the employee and cannot be held liable. In the accompanying Order, we grant the police corporal's motion for summary judgment and partially deny the supervisor's motion.

I.   **Undisputed Facts**[1]

American Airlines employs Plaintiff Kalilah Brantley ("Brantley"). During December 2010, Brantley's relationship with her shift manager Defendant Rene Burrows ("Burrows") deteriorated because Brantley complained about Burrows' failure to adhere to union policy and procedures for imposing mandatory overtime for union members.[2] Burrows accused Brantley of leaving her post early on December 28, 2010, while Brantley claims another supervisor authorized her to leave.

On December 30, 2010, Burrows, Brantley, fellow employee Sheila Presbury ("Presbury") and union representative Byron Williams, whom Brantley asked to be present, met and discussed Brantley's actions and the union overtime policy.[3] Brantley recorded this meeting on her cell phone placed on the table in the meeting room.[4] The parties dispute whether Burrows knew Brantley's cell phone recorded this meeting and whether Burrows' silence equals consent to the recording.[5]

At some unknown date shortly after the December 30, 2010 meeting, Brantley posted a letter for public display in the employee break room claiming Burrows violated union policy.[6] Brantley's letter admittedly "disgusted" Burrows.[7] Burrows and Brantley's relationship continued in an adversarial manner into January as Brantley continued to complain about Burrows' refusal to implement the overtime policy stated in the union's collective bargaining agreement ("CBA") requiring mandatory overtime in reverse seniority order for the union members.[8] Brantley then filed a grievance against Burrows for not implementing union policy regarding overtime, and spoke with Burrows' supervisor Richard Muise and union representative Byron Williams.[9] The parties have not briefed the number of union members' rights affected by Burrows' actions.

2

Brantley alleges Burrows contacted Corporal Keye Wysocki, a Pennsylvania State Police corporal ("Corporal Wysocki"), to help her retaliate against Brantley for her union protests. Burrows relayed her facts to Corporal Wysocki saying she wanted the incident investigated, and Corporal Wysocki initially responded it was not his job as a Pennsylvania State Police Officer.[10] Burrows told Wysocki she and Brantley didn't get along.[11] For an unknown reason, Wysocki then walked Burrows to the police station at the Philadelphia airport where Burrows filed a criminal complaint against Brantley, Presbury and Byron Williams.[12] When the Philadelphia police detective told Burrows she needed to obtain Brantley's alleged recording to proceed further with her complaint, Corporal Wysocki offered to get involved.[13]

Consistent with his offer, Corporal Wysocki approached Brantley during work hours on February 8, 2011 demanding Brantley turn over her cell phone used to record the December 30, 2010 meeting.[14] Corporal Wysocki then filed a state police incident report in February 2011 and a Criminal Complaint against Brantley on May 27, 2011 alleging unlawful intercept of oral communication, under 18 Pa.C.S. §5703.[15]

Brantley appeared in Delaware County Court to defend this criminal complaint. The state court granted Brantley's motion to suppress Brantley's statements and the cell phone recording evidence, holding Corporal Wysocki obtained this evidence without properly advising Brantley of her *Miranda* rights.[16] On appeal, the Pennsylvania Superior Court affirmed the state court's suppression order.[17] Subsequently, the Delaware County Court of Common Pleas granted the Commonwealth's Motion for *nolle prosequi*, and dismissed the criminal complaint against Brantley.[18] The court's order *nol pros* did not address Brantley's innocence for the crime charged.

Brantley then sued Burrows and Corporal Wysocki under 42 U.S.C. §1983 for First Amendment Retaliation and common law malicious prosecution. Brantley argues Defendants acted in concert to retaliate against her for protesting Burrows' anti-union policies.

## II.   Analysis

Burrows and Corporal Wysocki filed separate motions for summary judgment claiming there are no disputed facts and they are entitled to judgment as a matter of law.[19] Corporal Wysocki specifically claims the civil rights claim against him must be dismissed based on qualified immunity. We find Brantley adduced facts requiring jury determination only on her First Amendment Retaliation claim against Burrows.

### A.   Summary Judgment is denied on Brantley's §1983 First Amendment Retaliation claim.

To prevail on her First Amendment Retaliation claim, Brantley must show: (1) she engaged in protected speech or activity; (2) she suffered adverse action sufficient to deter a person of ordinary firmness from exercising constitutional rights; and (3) a causal link between the protected conduct and the adverse action.[20] Brantley must also adduce facts showing concerted action between private citizen Burrows and Corporal Wysocki to warrant liability against Burrows on the §1983 First Amendment Retaliation claim. Brantley has adduced sufficient evidence to warrant the First Amendment claim against Burrows proceeding to the jury.

#### 1.   Concerted Action

A private individual becomes a state actor for purposes of § 1983 conspiracy liability if he or she is a "willful participant in joint activity with the state or its agents."[21] Brantley adduced evidence from which a jury could find private citizen Burrows willfully participated in joint activity with Corporal Wysocki. There is sufficient evidence to suggest Burrows used

Corporal Wysocki to help procure Brantley's prosecution to retaliate against her for exercising her First Amendment rights.

### 2. Protected Speech or Activity

Brantley adduced evidence of her complaining of an alleged anti-union overtime policy implemented by Burrows. Brantley's complaint prompted a December 30, 2010 meeting between Burrows and Brantley to discuss the grievance. Brantley requested and received union representation at this December 30, 2010 meeting. After the meeting with Burrows and union representatives, Brantley continued to protest Burrows' alleged anti-union policies including posting a letter for public display accusing Burrows of violating union policy.[22] Burrows also complained about the allegedly violative overtime policy to Burrows' supervisor Richard Muise and union representative Byron Williams. Burrows expressed "disgust" about Brantley's posting the letter.[23] Brantley's activities challenging Burrows' non-compliance with union-negotiated overtime policies on behalf of her and presumably union members protesting Burrows' policies are likely protected by the First Amendment.[24] As the parties do not adequately address this issue based on content, we may review the scope of this protected speech at trial to ensure it is protected speech.[25]

### 3. Adverse action

Brantley produced evidence she suffered adverse action sufficient to deter a person of ordinary firmness from exercising constitutional rights. Brantley shows Burrows and Corporal Wysocki acted jointly for the purpose of interrogating and bringing criminal charges against her. Criminal charges are an adverse action. We find this alleged adverse action would deter a person of ordinary firmness from exercising constitutional rights, and these facts are sufficient to support Brantley's First Amendment claim.

### 4. Causal link

We find sufficient evidence from which a jury could find a causal link between Brantley's protests and the adverse action. A causal connection can be shown by "either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[26] Even in the absence of these elements, "evidence of causation may be 'gleaned from the record as a whole.'"[27]

Brantley's posted letter protesting Burrows' actions as violating union policy, and ongoing verbal protests about overtime policy are sufficiently proximate in time to Burrows' initiation of a criminal investigation begun by Corporal Wysocki, on January 18, 2011. Brantley adduced sufficient evidence supporting her claim Burrows' and Corporal Wysocki's initiating criminal proceedings against her were causally connected to Brantley's protests, rather than the actual recording of the December 28, 2010 Burrows/Brantley meeting. On these facts, we find sufficient evidence from which a jury could conclude improper retaliation.

### B. Corporal Wysocki is entitled to qualified immunity on Brantley's First Amendment Retaliation claim

"Qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[28] It applies to give government officials "breathing room to make reasonable but mistaken judgment."[29] "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" [30]

In considering qualified immunity, courts engage in a two-pronged examination. [31]First, we examine "whether the facts that a plaintiff has ... shown make out a violation of a

constitutional right."[32] Second, we examine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[33] We may begin consideration with either prong.[34]

We find Brantley adduced facts for a First Amendment retaliation claim. According to Brantley's version of the facts, Burrows and Corporal Wysocki singled her out and prosecuted her for a felony under the Pennsylvania Wiretap Act in retaliation for her activities protesting Burrows' anti-union policies. Brantley engaged in protected activity, suffered adverse action "sufficient to deter a person of ordinary firmness from exercising her rights", and there is a causal connection between the protest and the adverse action. If proven at trial these facts form an adequate basis for a First Amendment Retaliation claim against Wysocki.

The next question is determining if Brantley's constitutional right is clearly established. The issue becomes "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[35] Under the circumstances of this case, we hold a reasonable officer in Corporal Wysocki's position would not understand his conduct in charging Brantley for a wiretap violation under the Pennsylvania Law was unlawful. Brantley taped a conversation without Burrows' consent, at least according to Burrows. In other words, Wysocki is protected by qualified immunity because the unlawfulness of his actions was not apparent "in light of pre-existing law."[36] On these facts, we find Corporal Wysocki is entitled to qualified immunity for his actions on which Brantley's First Amendment Retaliation claim is based.

### C. Summary judgment on Brantley's malicious prosecution claim.

To prevail on her state law malicious prosecution claim, Brantley must show (1) defendants initiated criminal proceedings; (2) the proceedings were initiated without probable

cause; (3) the proceedings ended in Brantley's favor in a manner indicating she is innocent of the crime charged; and, (4) Defendants acted with malice or for a purpose other than bringing her to justice.[37]

An essential element of Brantley's malicious prosecution claim is demonstrating the prior proceedings ended in her favor in a manner indicating her innocence.[38] There is no dispute the prior proceedings terminated by grant of *nolle prosequi*. In some circumstances, innocence may be apparent from the face of a judgment *nol pros*, but we are directed to no such evidence in this case. "Not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably."[39] "A *nol pros* signifies termination of charges in favor of the accused 'only when their final disposition is such as to indicate the innocence of the accused.'"[40]

Although we express no opinion whether Brantley is innocent, we acknowledge absence of any adjudication of Brantley's innocence. Without evidence the Delaware County Court of Common Pleas disposed of the criminal complaint against her in a manner indicating Brantley is innocent of the crime charged, Brantley is unable to satisfy an essential element of her malicious prosecution claim. Summary judgment must be granted in favor of Defendants. *See DiFronzo, supra.* We need not address Defendants' remaining arguments seeking summary judgment on this claim.

### III. Conclusion

Even in this most curious fact pattern involving a supervisor enlisting a police officer to arrest an adversary, Corporal Wysocki is entitled to qualified immunity on the civil rights claim and Brantley cannot, as a matter of law, proceed on a malicious prosecution claim. Brantley

has adduced facts allowing her to proceed to jury trial on her First Amendment Retaliation claim against her supervisor Burrows.

---

[1] Our Policies require a Statement of Undisputed Facts ("SOF") and Appendix ("App.") in support of summary judgment. Burrows submitted SOF ("BSOF") at ECF Doc. No. 64-2, and Wysocki submitted SOF ("WSOF") at ECF Doc. No. 66-2. Brantley responded to Defendants' SOF and included additional facts she contends create a genuine issue for trial. (ECF Doc. No. 71-1). Defendants' Joint Appendix is docketed at ECF Doc. No. 65.

[2] App. 45.

[3] BSOF ¶8; App. 116-117.

[4] App. 119.

[5] BSOF ¶ 12, 13.

[6] App. 152-53.

[7] App. 156.

[8] App. 48, 50, 99, 110.

[9] App. 50.

[10] BSOF ¶18; App. 213.

[11] App. 219.

[12] BSOF ¶18; App. 455.

[13] BSOF ¶20, 23.

[14] App. 237.

[15] App. 438-445, 450-52.

[16] BSOF ¶¶33.

[17] BSOF ¶34; App. 459-471.

[18] BSOF ¶35.

[19] Summary judgment is appropriate where a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

---

56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We consider "the facts and draw all reasonable inferences in the light most favorable to the plaintiff, the party who opposed summary judgment." *Lamont v. New Jersey*, 637 F.3d 177, 179, n.1 (3d Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In doing so, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[20] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[21] *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) *aff'd*, 210 F.3d 358 (3d Cir. 2000) ((quoting *Dutton v. Buckingham Township*, No. 97–3354, 1997 WL 732856, *2 (E.D.Pa. Nov.13, 1997) (quoting *Adickes v. Kress & Co.*, 398 U.S. 144, 152 (1970)).

[22] App. 152-53.

[23] App. 156.

[24] *Scicchitano v. Cnty. of Northumberland*, No. 15- 852, 2015 WL 3932583, at *5 (M.D. Pa. 2015); *Justice v. Danberg*, 571 F.Supp.2d 602, 611 (D.Del. 2008); *see also Thomas v. Collins*, 323 U.S. 516, 532 (1945); *Labov v. Lalley*, 809 F.2d 220, 222-23 (3d Cir. 1987).

[25] Drawing all inferences favorably to Brantley at this stage, it appears Brantley advocated for the union at the time of her protest, and her activities are entitled to First Amendment protection. At trial, we may better discern whether Brantley's complaints are "anything other than part of a multi-faceted personal gripe" which does not mandate First Amendment protection. *Miller v. Clinton County*, 544 F. 3d 542, 550 (3d Cir. 2008).

[26] *Lauren W.*, 480 F.3d at 267; *Vaticano v. Twp. of Edison*, 514 F. App'x 218, 225 (3d Cir. 2013).

[27] *Germantown Cab Co. v. Philadelphia Parking Auth.*, No. 14-4686, 2015 WL 4770722, at *7 (E.D. Pa. 2015)(quoting *Vaticano* 514 F. App'x at 225).

[28] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[29] *Stanto v. Sims*, --- U.S. ---, 134 S.Ct 3, 5 (2013).

[30] *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

[31] *Montgomery v. Killingsworth*, No. 13-3082, 2015 WL 289934 *5 (E.D. Pa. 2015).

[32] *Pearson*, 555 U.S at 232.

[33] *Id.* (citation omitted); *Spady, supra*.

[34] *Spady*, 800 F.3d at 637.

[35] *Montgomery v. Killingsworth, supra*, at *5 (quoting *Saucier v. Katz*, 533 U.S. at 202).

[36] *Id.*

[37] *DiFronzo v. Chiovero*, 406 F. App'x 605, 609 (3d Cir. 2011).

[38] *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir.2000) ("Malicious prosecution requires that the plaintiff must be innocent of the crime charged in the underlying prosecution").

[39] *Hilfirty v. Shipman*, 91 F.3d 573, 579–580 (3d Cir.1996).

[40] *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir.2002) (quoting Restatement (Second) of Torts: Indecisive Termination of Proceedings § 660, cmt. a).